UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARIA A. KITRAS and JAMES J. DECOULOS, AS CO-TRUSTEES OF THE GORDA REALTY TRUST, | * * * * |  |
| Plaintiffs, | * * | Civil Action No. 16-cv-11428-ADB |
| v. | * * |  |
| PETER TEMPLE, et al., | * * |  |
| Defendants. | * |  |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiffs Maria A. Kitras and James J. Decoulos, as co-trustees of the Gorda Realty Trust (the "Trust"), allege that the town of Aquinnah (the "Town"), and certain of its boards and officials, prevented them from making improvements on their real estate through improper delay and denial of regulatory approval, which amounted to a temporary taking of their property and a violation of their rights to equal protection. Currently pending before the Court are Defendants' Motion to Dismiss [ECF No. 15], Plaintiffs' Motion for Leave to File Amended Complaint [ECF No. 25],[1] and Plaintiffs' Motion for Hearing on the pending motions [ECF No. 28].[2]

Plaintiffs' Motion for Hearing is <u>DENIED</u>. For the reasons set forth below, the Court <u>GRANTS</u> the Defendants' Motion to Dismiss without prejudice to whatever right Plaintiffs

---

[1] Plaintiffs filed a copy of their proposed amended complaint as a separate Motion to Amend Complaint [ECF No. 26]. The Court <u>DENIES</u> the motion but considers ECF No. 26 as an exhibit to Plaintiffs' Motion for Leave to File Amended Complaint.

[2] A party making or opposing a motion who wants to request oral argument should do so "in a separate paragraph of the motion or opposition," as opposed to a standalone motion. <u>See</u> L.R., D. Mass. 7.1(d).

might have to pursue both counts of the Complaint in state court and DENIES Plaintiffs' Motion for Leave to File Amended Complaint.

I.   BACKGROUND

In 1998, Plaintiffs began seeking regulatory approval to build a three-bedroom home and related improvements on the Trust's property located in the Town. [ECF No. 1 ¶¶ 1–2, 23] ("Compl."). Since then, Plaintiffs have participated in several administrative and judicial proceedings in pursuit of their proposed construction plan, id. ¶ 25, including with the Town Conservation Commission, the Massachusetts Department of Environmental Protection, the Division of Administrative Law Appeals, and the Middlesex Superior Court. Id. ¶¶ 26–36. Plaintiffs also sought and obtained approval of their proposed septic system from the Town Board of Health and a letter from the Natural Heritage and Endangered Species Program confirming that their proposal would not unduly harm an endangered or threatened species. Id. ¶¶ 40–44.

After this protracted series of proceedings, on July 22, 2011, Plaintiffs applied to the Town Planning Board and its Plan Review Committee for a Special Permit pursuant to the Town bylaws. Id. ¶ 45. The bylaws required a "Special Permit" from the Plan Review Committee for the siting of a new structure or dwelling on the property, or for making additions to existing structures. Id.; [ECF No. 16-1 at 9]. Plaintiffs provided the Plan Review Committee with supporting documents to demonstrate that, among other things, their proposal satisfied the bylaws' requirement of a minimum amount of frontage.[3] Compl. ¶¶ 49–52. At a public hearing

---

[3] See generally Gifford v. Planning Bd. of Nantucket, 383 N.E.2d 1123, 1126 (Mass. 1978) ("[T]he purpose of a frontage requirement is to make certain that each lot 'may be reached by the fire department, police department, and other agencies charged with the responsibility of protecting the public peace, safety and welfare.'") (quoting Mitchell v. Morris, 210 P.2d 857, 859 (Cal. App. 1949)).

on the application, the Plan Review Committee acknowledged that it had previously approved applications proposing equal or less frontage compared to Plaintiffs' application. Id. ¶ 53. Nonetheless, on December 6, 2011, the Plan Review Committee denied the application on several grounds, including that the application lacked the required amount of frontage. Id. ¶ 2; [ECF No. 16-1 at 4]. The Plan Review Committee did not state its reason for treating Plaintiffs' application differently from applications approved with equal or less frontage. Compl. ¶ 53.

Plaintiffs filed a complaint in the Massachusetts Land Court seeking review of the denial of their Special Permit application. [ECF No. 16-1 at 3]. As a preliminary matter, the Land Court dismissed certain claims for lack of subject matter jurisdiction, including Plaintiffs' takings claims and equal protection claims. [ECF No. 16-1 at 3–5]. While review of the validity of the Special Permit denial remained pending in the Land Court, Plaintiffs refiled the dismissed claims in Massachusetts Superior Court, essentially alleging that Defendants' delay or denial of regulatory approvals constituted a taking and that their Special Permit application was treated differently than similarly situated applicants in violation of their rights to equal protection. [ECF No. 24-5 at 32-34]. Defendants then removed the Superior Court case to federal court. Compl. ¶ 5; [ECF No. 24 at 7; ECF No. 24-5 at 2]. Thereafter, on or around August 13, 2013, the parties entered into a "stand still" agreement, pursuant to which the parties voluntarily dismissed the case in federal court without prejudice and agreed that Plaintiffs could refile their claims after a dispositive ruling in the Land Court action became final. Compl. ¶ 5.

On October 15, 2013, on cross motions for summary judgment, the Land Court ruled that Plaintiffs' application lacked sufficient frontage and failed to satisfy the applicable bylaw. [ECF No. 16-1 at 23]. The Land Court held:

> [P]laintiffs' July 22, 2011 application for a Special Permit did not depict adequate frontage under the [Town] Zoning By-Law, and for that reason, the decision of the

3

[Town] Plan Review Committee dated December 6, 2011 . . . is not arbitrary, capricious, or contrary to law, will not be overturned or upset by the court, and will stand as issued.

[ECF No. 16-2 at 4]. Plaintiffs appealed the decision to the Massachusetts Appeals Court, but ultimately filed a motion to voluntarily dismiss their appeal as moot, because they "ha[d] since obtained approvals from the [Town] for a development plan on a lot owned by the [Trust], with rights of access pursuant to a side agreement with abutters." [ECF No. 16-4 at 5]. The Appeals Court allowed the motion to dismiss the appeal, but declined to vacate the Land Court's judgment. Id. 5-6. Shortly after the Appeals Court entered its decision, Plaintiffs filed the instant case in this Court.

## II. LEGAL STANDARD

Defendants now move to dismiss this case for lack of subject matter jurisdiction and failure to state a claim. "Under a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction based solely on the pleadings, '[i]f the well-pleaded facts, evaluated in [the light most hospitable to the plaintiffs' theory of recovery and drawing all reasonable inferences in the plaintiffs' favor], do not support a finding of federal subject-matter jurisdiction,' the court must dismiss the action." Adams v. Town of Montague, No. 14–30178, 2015 WL 1292402, at *1 (D. Mass. Mar. 23, 2015) (alterations in original) (quoting Fothergill v. United States, 566 F.3d 248, 251 & n.1 (1st Cir. 2009). "Similarly, under a Rule 12(b)(6) motion to dismiss for failure to state a claim, if a complaint, based on the well-pleaded factual allegations, fails to allege 'content that allows the court to draw the reasonable inference that the defendant is liable' based a legally viable claim, it is subject to dismissal." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).[4]

---

[4] In addition to the complaint, in reviewing a motion to dismiss, "a court may consider matters of public record and facts susceptible to judicial notice." United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016). Such documents "ordinarily include

4

## III. DISCUSSION

Plaintiffs assert claims for (1) a temporary regulatory taking of property without just compensation in violation of art. 10 of the Massachusetts Declaration of Rights and the Fifth and Fourteenth Amendments of the United States Constitution and (2) a violation of their federal and state rights to equal protection. The takings claims are based on the denial of the Special Permit and delay or interference concerning other regulatory approvals that temporarily prevented Plaintiffs from using their property. The equal protection claims essentially arise out of the denial of the Special Permit and allegations that the Defendants previously approved applications of other property owners that posed the same or similar frontage deficiency. Defendants set forth a number of grounds for dismissal, but under the circumstances, the Court need only address dismissal on the grounds of ripeness.

### A. Takings Claims

Defendants argue that the takings claims are unripe and subject to dismissal, because Plaintiffs failed to first exhaust available remedies under state law for seeking just compensation, in accordance with the requirements set forth in Williamson Cty Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In response, Plaintiffs contend that Defendants waived this requirement when they removed Plaintiffs' prior action filed in Massachusetts Superior Court.

"In [Williamson], the Supreme Court held that the nature of a federal regulatory takings claim gives rise to two ripeness requirements which plaintiffs bear the burden of proving they have met before a federal court has jurisdiction over a takings claim." Downing/Salt Pond

---

'documents from prior state court adjudications.'" Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (quoting Boateng v. InterAmerican Univ., Inc., 210 F.3d at 56, 60 (1st Cir. 2000)). Neither party disputes that the Court may take judicial notice of the relevant proceedings in the Massachusetts Land Court. [ECF No. 16 at 4 n.1; ECF No. 24 at 5 n.1].

5

Partners, L.P. v. Rhode Island and Providence Plantations, 643 F.3d 16, 20 (1st Cir. 2011) (citing Williamson, 473 U.S. at 186).[5] "First, a regulatory takings claim is not ripe until the relevant government entity has 'reached a final decision regarding the application of the regulations to the property at issue.'" Id. (quoting Williamson, 473 U.S. at 186). See Garcia–Rubiera v. Calderon, 570 F.3d 443, 452 (1st Cir. 2009) ("final decision" is where "there is no pending process that would 'modify the statute's impact' on Plaintiffs") (citation omitted). Because Defendants do not dispute that the denial of the Special Permit, upheld on review by the Land Court and Appeals Court, constitutes a final decision, the Court assumes for present purposes that the Complaint satisfies the first prong of Williamson. [ECF No. 24 at 12; ECF No. 16 at 8-12]. See Perfect Puppy, Inc. v. City of East Providence, 98 F. Supp. 3d 408, 420 (D.R.I. 2015), aff'd 807 F.3d 415 (1st Cir. 2015).

Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Downing, 643 F.3d at 21 (citing Williamson, 473 U.S. at 195). See Marek v. Rhode Island, 702 F.3d 650, 653 (1st Cir. 2012) ("For a takings claim to be ripe, prior state administrative and/or judicial processes not only must have wrought a taking of particular property but also must have established the sovereign's refusal to provide just compensation for the property taken."). Satisfying the "state-exhaustion" prong of Williamson "entails a showing that the plaintiff has run the gamut of state-court litigation in

---

[5] The Court treats Plaintiffs' takings claims under Massachusetts law as on the same footing as the federal takings claims. See Stillman v. Town of Braintree, No. 12–cv–12033, 2013 WL 3830180 at *4 n.5 (D. Mass. July 22, 2013) (citing Blair v. Dep't of Conservation and Recreation, 932 N.E.2d 267, 270-271 (Mass. 2010)) (whether reviewing a state or federal takings claim, "Massachusetts courts require exhaustion, or an exception to the exhaustion requirement, to be ripe."). See also Commonwealth v. Blair, 805 N.E.2d 1011, 1016-1017 (Mass. App. Ct. 2004) ("[T]he Supreme Judicial Court, to date, has evaluated takings claims under the Federal analysis.").

6

search of just compensation (provided, however, that the state makes available adequate procedures for this purpose)." Marek, 702 F.3d at 653. "[A]n exception to the second ripeness requirement may obtain if a state's procedures for seeking just compensation are either 'inadequate' or 'unavailable.'" Id. (quoting Williamson, 473 U.S. at 196–197). "[T]his exception is narrowly construed, and the claimant must carry the heavy burden of showing unavailability or inadequacy." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002). Here, Plaintiffs do not dispute that the Massachusetts inverse condemnation statute, Mass. Gen. Laws ch. 79, provides an available, adequate procedure.[6] See Gilbert v. City of Cambridge, 745 F. Supp. 42, 52 (1st Cir. 1990) (quoting Ackerley Commc'ns of Mass., Inc. v. Somerville, 692 F. Supp. 1, 28 (D. Mass. 1988)) (M.G.L. c. 79, § 10 provides "a specific statutory remedy for governmental actions which amount to a taking without formal condemnation proceedings"); Adams v. Town of Montague, No. 14–30178, 2015 WL 1292402, at *2 (D. Mass. Mar. 23, 2015) (plaintiffs "must first exhaust their remedies in state court under M.G.L. c. 79 before bringing a Fifth Amendment takings claim . . . in federal court").

Plaintiffs do not allege that they have exhausted available state remedies but rather that Defendants waived this requirement by removing their prior state case to federal court. [ECF No. 24 at 7]. Plaintiffs rely on cases holding that the state-exhaustion requirement is a prudential limitation that may be waived where defendants stymie attempts to exhaust remedies in state

---

[6] Plaintiffs make a passing reference in a footnote that "it remains an open question whether [M.G.L.] c. 79, § 10, would even apply to [Plaintiffs'] takings claims here, since each of the Town actions at issue were accomplished by 'formal vote,'" because § 10 excludes takings "effected by or in accordance with a formal vote." [ECF No. 24 at 14 n.10]. The First Circuit has held with respect to § 10 that "'a formal vote' cuts in only when the condemnation of property is direct, not inverse (as in eminent domain proceedings)." Gilbert v. City of Cambridge, 932 F.2d 51, 64-65 (1st Cir. 1991). Moreover, even if the Court accepts Plaintiffs' passing reference as argument, an "open question" amounts at most to "lack of clarity," which fails to meet the high burden of inadequacy. Id. at 65 (quoting Culebras Enters. Corp. v. Rivera Rios, 813 F.2d 506, 514–515 (1st Cir. 1987)).

7

court through removal. See e.g., Martini v. City of Pittsfield, No. 14–30152, 2015 WL 1476768 at *4 (D. Mass. Mar. 31, 2015) ("Plaintiffs originally brought this action, including their state-law inverse condemnation claim under M.G.L. c. 79, in state court, but Defendants' removal prevented them from exhausting their remedies there."); Athanasiou v. Town of Westhampton, 30 F. Supp. 3d 84, 88-89 (D. Mass. 2014) (where defendants removed action to federal court, "Defendants cannot shift onto Plaintiffs the blame for non-exhaustion at the state level").

The Court acknowledges that whether the state-exhaustion requirement is a jurisdictional or prudential limitation may be an open question. Compare Perfect Puppy, 807 F.3d at 420-421 ("[W]e confess that we are not 100% sure that the state-exhaustion requirement actually is jurisdictional. Williamson itself never called its requirements jurisdictional. And as [the appellant] is quick to point out, the Supreme Court recently described the state-exhaustion requirement as a prudential principle rather than a jurisdictional limitation."); with Marek, 702 F.3d at 650 ("It follows inexorably that the plaintiff would have had to pursue this procedure fully in a state court before a federal court could exercise jurisdiction over his takings claim. His failure to do so was fatal to his federal takings claim."). The Court need not address this distinction here, however, because even if the state-exhaustion requirement is prudential, Plaintiffs have not alleged any "countervailing considerations" to warrant departing from "the relevant prudential factors that counsel against hearing [the] case." Martini, No. 14–30152, 2015 WL 1476768 at *3 (quoting United States v. Windsor, 133 S. Ct. 2675, 2687 (2013)).

Unlike in the cases relied upon, Plaintiffs did not file this case in state court only to have it removed to federal court. Plaintiffs filed a separate prior action that was removed, but the parties agreed to dismiss that case voluntarily without prejudice. Plaintiffs do not dispute that they could have refiled their state and federal claims directly in state court, and do not allege that

8

gamesmanship or litigation tactics on the part of Defendants thwarted them from exhausting their remedies in state court. Because Plaintiffs do not allege that they exhausted the adequate and available remedies under state law prior to filing this action in federal court, and present no credible basis for departing from the ripeness requirements of Williamson, their allegations fail to satisfy the state-exhaustion requirement. Accordingly, the Court dismisses Plaintiffs' takings claims without prejudice to whatever right Plaintiffs might have to pursue those claims in state court.[7]

### B. Equal Protection Claims

The Court also dismisses the equal protection claims without prejudice to whatever right Plaintiffs might have to pursue those claims in state court. In Downing, the district court dismissed the takings claims as unripe under Williamson and also dismissed the claims that were "coextensive" with the takings claims. 698 F. Supp. 2d 278, 288-289 (D.R.I. 2010) (quoting Rocky Mountain Materials & Asphalt, Inc. v. Bd. of Cty Comm'rs of El Paso Cty, 972 F.2d 309, 311 (10th Cir. 1992)). The district court considered that the plaintiff's remaining claims, including one for equal protection, presented the same "key issues" as the takings claims and that "[a]lthough the formal elements of the claims may differ, each will depend, broadly, on demonstrating the truth of the allegations . . . the gist of which is that Defendants harmed [plaintiff] financially by interfering with the development of its property." Id. at 289. The district

---

[7] The Court notes, without deciding, that should Plaintiffs refile their case in state court, and Defendants remove it to federal court, the state-exhaustion requirement could be subject to waiver. Compare Perfect Puppy, 807 F.3d at 421 ("True, a government defendant's removal of a case from state court may waive otherwise valid objections to litigation in a federal forum."); Martini, No. 14–30152, 2015 WL 1476768 at *4-5; Athanasiou, 30 F. Supp. 3d at 87-88 (D. Mass. 2014); with Stillman v. Town of New Braintree, No. 12–12033, 2013 WL 3830180 at *4 (D. Mass. July 22, 2013) (rejecting plaintiffs' argument that they would have pursued available state remedies in state court if not for defendants "gamesmanship in removing their Complaint and then moving for its dismissal").

9

court further explained that although "unique elements of proof could protect the remaining theories of liability," the complaint had demonstrated that the remaining claims were "'ancillary to th[e] main issue." Id. at 290 (quoting Bigelow v. Mich. Dep't of Nat. Res., 970 F.2d 154, 160 (6th Cir. 1992)). On appeal, the First Circuit did not reach whether the ancillary claims were properly dismissed but noted that "we have previously held that a plaintiff cannot, merely by recasting its takings claim 'in the raiment of a due process violation,' evade the [Williamson] ripeness requirements." Downing, 643 F.3d at 28 (quoting Deniz, 285 F.3d at 149). See also Marek, No. 11–033, 2012 WL 693566 at *4 (D.R.I. Mar. 2, 2012), aff'd 702 F.3d 650 (1st Cir. 2012) (where it appeared from the complaint that "the crux of [plaintiff's] factual allegations and damages claims relate to the takings claim, with due process and other constitutional violations thrown in for good measure," the failure to exhaust state court remedies "appear[ed] fatal to his due process claims").

Here, the allegations at the core of the takings claims also support the equal protection claims. Plaintiffs allege in Count II (42 U.S.C. § 1983 and Constitutional Violations) that Defendants violated their constitutional rights through "their treatment of the [Plaintiffs] differently than similarly situated owners and applicants without a rational basis and their temporary taking of the Trust's Property without just compensation." Compl. ¶ 70. The gist of both claims is that the denial of the Special Permit, and any other regulatory delay or interference, "harmed [Plaintiffs] financially by interfering with the development of [their] property." Downing, 698 F. Supp. 2d at 289.

Moreover, the equal protection claims appear ancillary because the allegations concerning their unique elements are less specific and more conclusory, leaving the Court to "judge for itself whether those claims are 'bona fide.'" Downing, 698 F. Supp. 2d at 290

10

(quoting Patel v. City of Chicago, 383 F.3d 569, 573 (7th Cir. 2004)). Under a class-of-one theory, Plaintiffs must sufficiently allege that Defendants "(1) intentionally treated them differently; (2) from others similarly situated; and (3) without a rational basis for the disparate treatment." Sampson v. Town of Salisbury, 441 F. Supp. 2d 271, 279 (D. Mass. 2006). Plaintiffs do not squarely address the rational basis that the Land Court articulated for Defendants' denial of the permit in light of similar proposals receiving approval, the gist of which was that prior approvals may have been given "improvidently," but "[t]he fact that one house got built when it should not have, does not authorize all who later request the same opportunity to build to do so," because "[i]f that were not true, a municipality, having once blundered, would not again be able to insist that its zoning law be followed." [ECF No. 16-1 at 27–28]. The allegations that the Plan Review Committee itself did not express a reason for treating Plaintiffs differently are insufficient, because "[t]he question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason." Priolo v. Town of Kingston, 839 F. Supp. 2d 454, 462 (D. Mass. 2012) (quoting Jeneski v. City of Worcester, 476 F.3d 14, 17 (1st Cir. 2007)).

The Complaint also arguably asserts an equal protection violation for "improper selective enforcement of lawful local regulations." Rubinovitz v. Rogato, 60 F.3d 906, 909 (1st Cir. 1995). Under a selective enforcement theory, Plaintiffs must sufficiently allege that "compared with others similarly situated, [they were] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. P'ship v. R. I. Hous. and Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (quoting Rubinovitz, 60 F.3d at 909–910). In support of their claims, Plaintiffs allege malicious or bad faith intent, the standard for

11

which is "very high and must be 'scrupulously met.'" Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 145 (D. Mass. 2006) (quoting Rubinovitz, 60 F.3d at 911). Again, Plaintiffs do not clearly allege how Defendants acted with malice or bad faith. The Complaint contains some allegations that suggest the actions of Defendants could have been motivated by their own self-interest in that Defendants and local land conservation organizations (in which certain Defendants had affiliations) were acquiring land near Plaintiffs' property and were aware that Plaintiffs' property would be cheaper and easier to acquire if Plaintiffs were denied a Special Permit. Compl. ¶¶ 58-62. Nevertheless, Plaintiffs' allegations "focus on the ways the Defendants' actions have stymied development of the [] land parcel," and not on showing how Defendants' conduct actually manifested any malicious intent. Downing, 698 F. Supp. 2d at 290. Accordingly, the Court finds that the equal protection claims are ancillary to the takings claims and dismisses them without prejudice to whatever right Plaintiffs might have to pursue them in state court.

### IV. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiffs filed a Motion for Leave to File Amended Complaint in order to (1) add additional allegations concerning similarly situated properties that Defendants approved for development, (2) make explicit reference to Mass. Gen. Laws ch. 79 in asserting their takings claims, and (3) insert minor corrections to the case caption and background allegations. Because the amended complaint would not have any effect on the ripeness grounds on which the Court dismisses the case, the Court denies Plaintiffs' Motion for Leave to File Amended Complaint.

### V. CONCLUSION

Accordingly, it is hereby ordered that (1) Defendant's Motion to Dismiss [ECF No. 15] is GRANTED to the extent that the Complaint is dismissed without prejudice to whatever right

Plaintiffs might have to pursue both counts in state court; (2) Plaintiffs' Motion for Leave to File Amended Complaint [ECF Nos. 25 & 26] is <u>DENIED</u>; and (3) Plaintiffs' Motion for Hearing [ECF No. 28] is <u>DENIED</u>.

**SO ORDERED.**

Date: September 25, 2017                             /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE